UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ROSA L. FLORES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:14-cv-142 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of SSA, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the

Commissioner filed by the plaintiff, Rosa L. Flores, on May 8, 2014. For the following reasons,

the decision of the Commissioner is **REMANDED**.

*Background*

The plaintiff, Rosa L. Flores, filed an application for Disability Insurance Benefits and

Supplemental Security Income on June 14, 2011, alleging a disability onset date of March 3,

2009. (Tr. 19). The Disability Determination Bureau denied Flores' application on July 28,

2011, and again upon reconsideration on October 3, 2011. (Tr. 19). Flores subsequently filed a

timely request for a hearing on October 11, 2011. (Tr. 19). A hearing was held on September

14, 2012, before Administrative Law Judge (ALJ) Maryann S. Bright, wherein the ALJ issued an

unfavorable decision on October 5, 2012. (Tr. 19, 30). Vocational Expert (VE) Sharon D.

Ringenberg and Jose Mendez-Flores, Flores' son, testified at the hearing. (Tr. 19). At the

hearing, Flores amended her alleged onset date to November 5, 2010. (Tr. 19). The Appeals

Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr.

1–15).

At step one of the five step sequential analysis for determining whether an individual is disabled, the ALJ found that Flores had not engaged in substantial gainful activity since November 5, 2010, her alleged onset date.  (Tr. 21).  At step two, the ALJ determined that Flores had the following severe impairments:  degenerative disc disease, obesity, osteoarthritis of the bilateral knees, depression, and pain disorder.  (Tr. 21).  Also at step two, the ALJ concluded that Flores' headaches were not a severe impairment.  (Tr. 22).  Flores alleged she had headaches three days a week, and medical records indicated that she reported headaches and balance symptoms beginning in March 2011.  (Tr. 22).  Flores underwent balance function testing in June 2011, but the ALJ did not find evidence of a follow-up.  (Tr. 22).  In May 2012, she saw a neurologist, Dr. James Stevens, who diagnosed her with pain secondary to a right occipital neuralgia for which Flores received an occipital nerve block.  (Tr. 22).  The ALJ determined that the headaches were not a severe impairment because Flores did not need to go to the emergency room for headache treatment and there was no evidence in the record to corroborate the continued frequency of her headaches.  (Tr. 22).

At step three, the ALJ concluded that Flores did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. 22).  First, the ALJ determined that Flores' knee impairment did not meet the requirements for Listing 1.02, major dysfunction of a joint.  (Tr. 23).  The ALJ indicated that Listing 1.02 required gross anatomical deformity with motion limitations and findings on imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint with an inability to ambulate effectively.  (Tr. 23).  In reaching her conclusion, the ALJ noted that Flores' medical record contained several reports of a normal gait without the use of an assistive device.  (Tr. 23).  This finding was contradicted by the fact that she used a walker at the hearing and that her treating

physician approved a prescription for an assistive device in March 2012. (Tr. 23). Additionally, the ALJ indicated that the record was devoid of reports of imaging of Flores' knees that supported the required abnormalities. (Tr. 23).

Second, the ALJ concluded that Flores' back impairment did not meet or medically equal Listing 1.04, disorders of the spine. (Tr. 23). The ALJ stated that the impairment did not meet Listing 1.04A because there was no evidence of the presence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of spine motion, motor loss accompanied by sensory or vibratory loss, and positive straight-leg raising. (Tr. 23). Next, the ALJ indicated the impairment did not meet Listing 1.04B because there was no diagnostic imaging of spinal arachnoiditis manifested by severe burning or painful dysesthesia that required Flores to change her position or posture more than once every two hours. (Tr. 23). Last, the ALJ determined that Flores did not meet Listing 1.04C because there was no spinal stenosis resulting in pseudoclaudication manifested by chronic nonradicular pain and weakness or an inability to ambulate effectively. (Tr. 23).

The ALJ then addressed Flores' obesity impairment. (Tr. 23). Flores reported she was 64 inches tall and weighed 286 pounds, which the ALJ equated to a 49.1 body mass index and a Level III "extreme" obesity classification under the National Institutes of Health's clinical guidelines. (Tr. 23). The ALJ stated there was no specific listing for obesity but reported that she considered the aggravating effects of obesity on Flores' other impairments pursuant to SSR 02-1p. (Tr. 23).

The ALJ determined that Flores' mental impairments did not meet the criteria for Listing 12.04, affective disorders, or Listing 12.07, somatoform disorders. (Tr. 23). To reach that conclusion, the ALJ considered the "paragraph B" criteria, which required mental impairments in

at least two of the following:  marked restriction of daily living activities; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation of extended duration.  (Tr. 23).  The ALJ defined a marked restriction as more than moderate but less than extreme and repeated episodes of decompensation of extended duration as three episodes within one year or an average of once every four months, each lasting for at least two weeks.  (Tr. 23).

The ALJ determined that Flores had a moderate restriction for activities of daily living. (Tr. 23).  Although the ALJ noted that Flores' thirteen year old son performed most of the cooking, cleaning, and mowing the yard and that her five year old daughter helped with household chores, she concluded that Flores attended to personal hygiene, provided child care, cooked, did laundry, drove and left the home alone, shopped, managed money, read, followed instructions, and socialized.  (Tr. 23).  Furthermore, she stated that Flores parented two minor children as a single parent, attended church twice weekly for two hours, and attended an English language class once weekly for three hours.  (Tr. 23–24).  Therefore, the ALJ determined that Flores' activities were primarily limited by her physical conditions or pain rather than depression.  (Tr. 24).

The ALJ concluded that Flores had no social functioning difficulties.  (Tr. 24).  Flores denied having problems getting along with family, friends, neighbors, or authority figures, and the ALJ found that she shopped and attended church and an English language class every week. (Tr. 24).

The ALJ stated that Flores had moderate difficulties with concentration, persistence, or pace.  (Tr. 24).  Flores acknowledged that she could follow written and spoken instructions, manage money, drive, and attend church services and an English class within her physical pain

limits. (Tr. 24). The consultative examiner concluded that Flores likely functioned in the low average range of intelligence but that her long-memory was intact, that she could perform mental arithmetic tasks, and that she did not appear to have any significant cognitive or intellectual deficits. (Tr. 24). The ALJ found that Flores experienced no episodes of decompensation of extended duration. (Tr. 24). Therefore, the ALJ concluded that Flores did not meet the "paragraph B" criteria because her mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation of extended duration. (Tr. 24).

The ALJ also determined that Flores did not satisfy the "paragraph C" criteria. (Tr. 24). She indicated that Flores had no repeated episodes of decompensation of extended duration, found that a minimal increase in mental demands or a change in environment would not cause her to decompensate, and stated there was no evidence that Flores could not function outside a highly supportive living arrangement or her own home. (Tr. 24).

The ALJ then assessed Flores' residual functional capacity as follows:

> [T]he claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand or walk for approximately two hours per eight-hour workday, and sit for approximately six hours per eight-hour workday, with normal breaks. She can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. She is capable of occasionally balancing, stooping, kneeling, crouching and crawling. She should avoid all exposure to wetness or humidity, uneven surfaces, unprotected heights, and dangerous machinery. The claimant is capable of work limited to simple, routine and repetitive tasks.

(Tr. 24–25). The ALJ explained that in considering Flores' symptoms she followed a two-step process. (Tr. 25). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that could reasonably be expected to produce Flores' pain. (Tr. 25). Then,

she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Flores' functioning. (Tr. 25).

Flores testified that she stopped working at an assembly job in 2009 because the company closed her line and that she worked putting labels on packages in May 2012, but her impairments limited her to two days per week. (Tr. 25). She indicated she had lower back pain that radiated down her legs, her knee pain was aggravated by standing and walking, and she had pain and numbness in her hands from carpal tunnel syndrome. (Tr. 25). Flores had surgery in November 2010 that somewhat helped her back, but the pain returned. (Tr. 25). Additionally, she got dizzy every day for a minute or two at a time and had headaches three times a week. (Tr. 25). Flores stated she was up and down throughout the day and usually sat for five to ten minutes and then stood for one to five minutes. (Tr. 25). She used her walker with a seat every day and was depressed, but her medication helped slightly. (Tr. 25).

Flores' son testified that her symptoms slowly worsened and that her back surgery helped at first, but her leg pain continued and the surgery site later became fractured. (Tr. 25). Her son drove her to doctor appointments and translated for her and indicated she could not walk from the parking lot to the building. (Tr. 25).

The ALJ then stated that she did not find Flores' statements concerning the intensity, persistence, and limiting effects credible to the extent they were inconsistent with the RFC assessment. (Tr. 25–26). First, the ALJ noted that Flores had no history of mental health treatment and that her primary care physician, Dr. Hector Perez, diagnosed her with depression and prescribed Cymbalta and Zoloft. (Tr. 26). However, his notes failed to show any abnormal psychiatric signs and symptoms. (Tr. 26). In July 2011, Dr. Kenneth Bundza performed a consultative mental status examination on Flores where she reported health problems and

secondary depression with symptoms of crying spells, sad affect, and problems sleeping. (Tr. 26). Dr. Bundza found Flores' long-term memory intact, she could perform mental arithmetic tasks, and she did not appear to have any significant cognitive or intellectual deficits. (Tr. 26). Dr. Bundza diagnosed Flores with major depressive disorder and pain disorder and gave her a Global Assessment of Functioning of 55, which indicated moderate symptoms or difficulties in social or occupational functioning. (Tr. 26).

State agency psychologists found Flores' mental impairments nonsevere, and the ALJ determined that Flores' broad range of activities supported that finding related to her depression. (Tr. 26). The ALJ gave more weight to Flores' testimony regarding her pain, which she relieved by lying down and reading the Bible. (Tr. 26). The ALJ concluded that Flores' pain disorder either by itself or in combination with depression limited her activities to brief periods of time and affected her ability to concentrate on complex tasks. (Tr. 26). Therefore, the ALJ included a limitation to simple, routine, and repetitive tasks in the RFC. (Tr. 26).

Flores alleged disability due to pain in her back, legs, knees, and feet that was aggravated by obesity. (Tr. 26). The ALJ observed that she used a walker, was uncomfortable throughout the hearing, and noted that Dr. Perez approved a prescription for a walker. (Tr. 26). However, the ALJ cited multiple reports from her medical records that indicated a normal gait without the use of an assistive device. (Tr. 26). The ALJ determined that the medical evidence did not substantiate her alleged level of pain and functional limitation despite it showing some musculoskeletal abnormalities. (Tr. 26).

In September 2009, an MRI on Flores' right knee showed a complete full thickness cartilage loss throughout the medial compartment of the knee and extensive complex tearing of the medial meniscus. (Tr. 26). Flores was more concerned with her back and only received pain

medication, but she received a joint injection in her right knee from Dr. Perez in March 2012. (Tr. 26). In May 2011, Dr. Richard Hilker, a podiatrist, diagnosed Flores with fasciitis in her right foot and a Freiburg's infraction in the left second metatarsal phalangeal joint. (Tr. 26). Flores received a cortisone injection in her heel, but there was no evidence of ongoing treatment. (Tr. 26).

In September 2009, an MRI of her lumbar spine showed disc protrusions at L4-5 and L5-S1 that caused slight spinal stenosis and lateral recess narrowing. (Tr. 27). In February 2010, an electrodiagnostic study of Flores' right leg revealed acute and chronic right L5 radiculopathy but no evidence of peripheral polyneuropathy. (Tr. 27). A second MRI of her lumbar spine performed in September 2010 showed mild results with mild degenerative changes and slight disc bulging at the L3-4 and L4-5 levels without significant stenosis. (Tr. 27). At L5-S1, a central disc protrusion contributed to mild to moderate narrowing and mild compression of the traversing right S1 nerve root. (Tr. 27). Additionally, disc height loss, disc bulging, and small endplate osteophytes contributed to mild chronic bilateral foramina narrowing without evidence of foraminal nerve root compression. (Tr. 27). Dr. Robert Shugart described Flores' MRI as "quite benign," recommended conservative treatment, and diagnosed a "mildly active" L5 radiculopathy. (Tr. 27). Flores did not believe her pain was bad enough to consider surgery, so she received a lumbar injection that provided approximately fifty percent relief. (Tr. 27).

In November 2010, Flores underwent a right L5 hemilaminectomy and discectomy after failing approximately five steroid injections. (Tr. 27). She reported significant improvement in her right sciatica but continued to complain about pain in her lower back. (Tr. 27). A June 2011 lumbar MRI indicated post-operative changes at L5-S1 and degenerative changes at L3-4 through L5-S1. (Tr. 27). There was no evidence of disc herniation, vertebral body compression,

or nerve root compression, but the findings were compatible with a small partial-thickness trabecular stress fracture line of the L5 vertebral body. (Tr. 27).

In June 2011, Dr. Isa Canavati examined Flores and noted a decreased range of motion of the lumbar spine but found her gait and station steady and that she could walk without assistance. (Tr. 27). Dr. Canavati diagnosed intractable mechanical low back pain and stated "she will have difficulty going back to regular employment and it is reasonable to consider applying for disability." (Tr. 27). In September 2011, Dr. Perez found decreased flexion, extension, lateral bending, and rotation, positive right straight leg raising, normal gait and station, and full strength in all extremities. (Tr. 27). Furthermore, in March 2012, when Dr. Perez approved a walker he found normal gait and station. (Tr. 27).

In 2012, Flores had physical therapy, and her performance raised doubt on the credibility of her symptom reports. (Tr. 27). At the initial evaluation, Flores had a slow gait pattern with a wide base of support, but she could ambulate without an assistive device. (Tr. 27). Additionally, she had a reduced range of motion and displayed discomfort. (Tr. 27). However, in her discharge summary on May 2, 2012, Flores' therapist stated she was hard to motivate, moved unnecessarily slow, and gave poor effort. (Tr. 27). The therapist concluded that she could move better than she demonstrated to the therapy staff. (Tr. 27).

In 2012, Flores saw Dr. Bhupendra Shah several times and complained of numbness and pain in her right thigh. (Tr. 27). Flores had normal strength in her upper and lower extremities except for weakness in her right quadriceps muscle, had normal muscle coordination, walked slowly, and had tenderness to percussion over the lumbar region. (Tr. 27–28). In June 2012, an EMG and nerve conduction study of her lower extremities was mildly abnormal with findings

that could indicate a mild degree of motor neuropathy but no radiculopathy. (Tr. 28). In July 2012, Flores had been changed from Neurontin to Lyrica which helped her. (Tr. 28).

At step four, the ALJ determined that Flores was unable to perform her past relevant work. (Tr. 28). Considering Flores' age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that Flores could perform, including addresser (100 jobs regionally, 1,500 jobs in Indiana, and 200,000 jobs nationally), table worker (100 jobs regionally, 1,200 jobs in Indiana, and 40,000 jobs nationally), and tube operator/mail clerk (75 jobs regionally, 500 jobs in Indiana, and 35,000 jobs nationally).

### *Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."); *Pepper v. Colvin*, 712 F.3d 351, 361–62 (7th Cir. 2013); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005); *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098; *Pepper*, 712 F.3d at 361–62; *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's

decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013); ***Rice v. Barnhart***, 384 F.3d 363, 368–69 (7th Cir. 2004); ***Scott v. Barnhart***, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez***, 336 F.3d at 539.

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see **Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ

reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work.  If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled.  **20 C.F.R. §§ 404.1520(e), 416.920(e)**.  However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy.  **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**.

First, Flores has argued that the ALJ failed to incorporate her conclusion that Flores had moderate difficulties in concentration, persistence, or pace into the hypothetical questions posed to the VE.  The ALJ's RFC assessment and the hypothetical posed to the VE must incorporate all of the claimant's limitations supported by the medical record.  *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)); *Indoranto v. Barnhart*, 374 F.3d 470, 473–74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record.").  That includes any deficiencies the claimant has in concentration, persistence, or pace.  *Yurt*, 758 F.3d at 857; *O'Connor-Spinner*, 627 F.3d at 619 ("Among the limitations the VE must consider are deficiencies of concentration, persistence and pace."); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (indicating the hypothetical question "must account for documented limitations of 'concentration, persistence, or pace'") (collecting cases).  The most effective way to ensure that the VE is fully apprised of the claimant's limitations is to include them directly in the hypothetical.  *O'Connor-Spinner*, 627 F.3d at 619.

However, ALJs do not need to explicitly state "concentration, persistence, or pace" in the hypothetical for all cases. *Yurt*, 758 F.3d at 857; *O'Connor-Spinner*, 627 F.3d at 619. Rather, a court may assume a VE's familiarity with a claimant's limitations, despite deficiencies in the hypothetical, when the VE independently reviewed the medical record or heard testimony directly addressing those limitations. *O'Connor-Spinner*, 627 F.3d at 619; *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). This exception does not apply if the ALJ poses a series of increasingly restrictive hypotheticals because courts infer that the VE's attention is focused on the hypotheticals and not the record. *O'Connor-Spinner*, 627 F.3d at 619; *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004).

An ALJ's hypothetical may omit "concentration, persistence, or pace" when it is manifest that the ALJ's phrasing specifically excluded tasks that someone with the claimant's limitations could not perform. *O'Connor-Spinner*, 627 F.3d at 619. For example, courts have upheld hypotheticals that restricted a claimant to low-stress work when the limitations were stress or panic related. *See Johansen v. Barnhart*, 314 F.3d 283, 285, 288–89 (7th Cir. 2002) (upholding a hypothetical formulated in terms of "repetitive, low-stress" work because the description eliminated positions likely to trigger symptoms of the panic disorder that originated the claimant's moderate limitations in concentration, persistence, or pace); *Arnold v. Barnhart*, 473 F.3d 816, 820, 823 (7th Cir. 2007) (upholding a hypothetical that restricted the claimant to low-stress, low-production work when stress-induced headaches, frustration, and anger caused the claimant's difficulties in concentration, persistence, or pace).

Courts may uphold a hypothetical that does not mention "concentration, persistence, or pace" when the underlying conditions were mentioned and the link between the underlying condition and the concentration difficulties was apparent enough to incorporate those difficulties

by reference.  *See **Simila***, 573 F.3d at 521–22 (upholding the hypothetical but indicating the failure to include the specific limitations was "troubling").  Generally, terms like "simple, repetitive tasks" alone do not exclude from the VE's consideration those positions that present significant problems with concentration, persistence, or pace.  ***Stewart***, 561 F.3d at 684–85 (finding hypothetical limited to simple, routine tasks did not account for limitations of concentration, persistence, or pace); *see **Kasarsky v. Barnhart***, 335 F.3d 539, 544 (7th Cir. 2003) (posing hypothetical as individual of borderline intelligence did not account for limitations of concentration).

In this case, the ALJ found that Flores had moderate difficulties in concentration, persistence, or pace.  (Tr. 24).  However, the ALJ did not include the moderate difficulty in concentration, persistence, or pace limitation in her hypothetical posed to the VE.  (Tr. 65–66).  The ALJ posed the following hypothetical:

> [P]lease assume a hypothetical individual with the past jobs you described.  Further assume that the individual can lift up to 20 pounds occasionally; lift or carry up to ten pounds frequently; stand or walk for approximately two hours per eight hour workday and sit for approximately six hours per eight hour workday, with normal breaks.  The individual can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds.  The individual is capable of occasional balancing, stooping, kneeling, crouching and crawling.  The individual should avoid concentrated exposure to wetness or humidity, uneven surfaces, unprotected heights and dangerous machinery.  Can the hypothetical individual perform any of the past jobs you described, as actually performed or generally performed in the national economy?

(Tr. 65).  The ALJ then asked additional hypotheticals with increasing restrictions that included "[w]hat if the work were limited to simple, routine and repetitive tasks . . . ."

Therefore, the ALJ's hypothetical does not qualify for the exception that she did not need to explicitly state "concentration, persistence, or pace" because she posed a series of increasingly

restrictive hypotheticals. Additionally, it was not manifest that the ALJ's phrasing excluded tasks that someone with Flores limitations could not perform. Flores' limitations are not stress or panic related, and the ALJ did not limit the positions to "low-stress" work. Also, the ALJ did not mention Flores' underlying conditions in an attempt to link the underlying condition and the concentration difficulties by reference. The ALJ did limit the work to "simple, routine and repetitive tasks," but, as discussed above, that alone did not account for limitations of concentration, persistence, or pace. Therefore, the ALJ erred on this issue by not including Flores' moderate difficulties in concentration, persistence, or pace in the hypotheticals posed to the VE.

Second, Flores has argued that the ALJ erred by mechanically applying the age categories in a borderline situation. The Medical-Vocational Guidelines, or grid, is a chart that classifies a claimant as disabled or not disabled based on the claimant's physical capacity, age, education, and work experience. **Walker v. Bowen**, 834 F.2d 635, 640 (7th Cir. 1987); *see* **20 C.F.R. pt. 404, subpt. P, App. 2 § 200.00(a)** ("Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled."). The age classification is split into three separate categories: younger person—under age 50, person closely approaching advanced age—age 50-54, and advanced age—age 55 or older. **20 C.F.R. 404.1563(c)–(e)**. A younger person generally is not considered to be affected in his ability to adjust to other work, but persons age 45-49 are more limited in their ability to adjust than persons under age 45 in some circumstances. **20 C.F.R. 404.1563(c)**.

The Commissioner applies the applicable age category to the claimant during the period that she must decide whether the claimant is disabled. **20 C.F.R. 404.1563(b)**. However, the

age category is not applied mechanically in a borderline situation. **20 C.F.R. 404.1563(b)**. When the claimant is within a few days to a few months of reaching an older age category and using the older age category would result in a disability determination, then the Commissioner should consider whether to use the older age category after evaluating the overall impact of all the factors. **20 C.F.R. 404.1563(b)**.

"[C]ourts have held that there is no brightline rule for what constitutes a borderline situation." *Holland v. Comm'r of Soc. Sec.*, 2012 WL 11052, at *1 n.1 (W.D. Pa. Jan. 3, 2012); *see Phillips v. Astrue*, 671 F.3d 699, 703 (8th Cir. 2012) (declining to draw a bright line rule for a borderline situation). Some courts have concluded that a borderline situation exists when the claimant is within six months of the next age category. *See Lewis v. Comm'r of Soc. Sec.*, 666 F. Supp. 2d 730, 738 (E.D. Mich. 2009) ("Generally, courts hold that a person within six months of the next higher age category is considered 'borderline.'"); *Gallagher v. Astrue*, 2009 WL 929923, at *6 (D.N.H. April 3, 2009) ("Although the courts have varied in their interpretation of in what period of time the borderline range falls, the general consensus is that the borderline range falls somewhere around six months from the older age category."). However, other courts have concluded that a borderline situation did not exist when the claimant was four months from the older age category. *See Woods v. Chater*, 1996 WL 570490, at *5 (N.D. Cal. Sept. 27, 1996) ("[F]our months does not appear to be in the borderline under the circumstances of this case.").

Additionally, there is no bright line rule for whether the Commissioner must make a specific finding in borderline situations. *See Phillips*, 671 F.3d at 704–07 (comparing the requirements for different circuits); *Anderson v. Astrue*, 2011 WL 2416265, at *11 (N.D. Ill. 2011) (discussing the divergent approaches). In 1985, the Third Circuit addressed this issue when it remanded because the ALJ failed to address 20 C.F.R. § 404.1563(a). *Kane v. Heckler*,

776 F.2d 1130, 1134 (3d Cir. 1985) (declining to specify what findings are required).  Similarly, the Tenth Circuit remanded when an ALJ failed to consider a borderline situation.  ***Daniels v. Apfel***, 154 F.3d 1129, 1135 (10th Cir. 1998).

The Sixth Circuit concluded that the ALJ is not obligated to discuss a claimant's borderline age situation in his opinion because the regulations only require the Commissioner to consider a different age category in borderline situations.  ***Bowie v. Comm'r of Soc. Sec.***, 539 F.3d 395, 399 (6th Cir. 2008).  However, the Sixth Circuit indicated that ALJs must provide sufficient explanation of their disability determination to assure reviewers that the decision was supported by substantial evidence and that the failure to provide an explanation could render the decision not supported by substantial evidence.  ***Bowie***, 539 F.3d at 400–01.  The Ninth Circuit found that an ALJ satisfied the requirement to consider the older age categories when the ALJ mentioned the claimant's date of birth, age category, and cited 20 C.F.R. § 404.1563.  ***Lockwood v. Comm'r Soc. Sec. Admin.***, 616 F.3d 1068, 1071–72 (9th Cir. 2010).

The Seventh Circuit has not addressed this issue, but courts within the Seventh Circuit have agreed with the Third and Tenth Circuits' approach.  *See **Figueroa v. Astrue***, 848 F. Supp. 2d 894, 902 (N.D. Ill. 2012) (remanding when the claimant was within three months of the next age bracket and the ALJ failed to discuss whether to place the claimant in the next bracket); ***Anderson***, 2011 WL 2416265, at *11 (remanding and adopting the Tenth Circuit approach that requires the ALJ to provide some explanation regarding § 404.1563(b)); ***Young v. Barnhart***, 287 F. Supp. 2d 905, 913 (N.D. Ill. 2003) (remanding when the claimant was four and a half months shy of the next age category).

In this case, the ALJ found that Flores was born on January 10, 1968, was forty-two years old on the alleged disability onset date, and fell within the younger individual age category of

18-44. (Tr. 29). Flores indicated that she was ninety-six days from the age 45-49 category when the ALJ issued her decision and claimed she would be disabled under grid rule 201.17 if the ALJ used the age 45-49 category. Although the ALJ cited 20 C.F.R. § 404.1563, she did not address whether she considered the next age category or whether this case constituted a borderline situation. This court agrees with the other district courts within the Seventh Circuit and finds that the ALJ must provide some explanation whether she considered placing the claimant in the next age bracket in a borderline situation. In this case, the ALJ did not provide any discussion about that issue. Therefore, the ALJ must consider and address placing Flores in the next age bracket on remand.

Third, Flores has argued that the ALJ erred by finding her symptom testimony incredible. This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013); *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles her opinion to great deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997); *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *see Bates*, 736 F.3d at 1098.

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." **20 C.F.R. §404.1529(a);** *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir.2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F.R. §404.1529(c);** *see Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005) ("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination "solely on the basis of objective medical evidence." SSR 96-7p, at *1; *see* ***Moore v. Colvin***, 743 F.3d 1118, 1125 (7th Cir. 2014) ("'[T]he ALJ cannot reject a claimant's testimony about limitations on her daily activities solely by stating that such testimony is unsupported by the medical evidence.'") (quoting ***Indoranto***, 374 F.3d at 474); ***Indoranto***, 374 F.3d at 474; ***Carradine v. Barnhart***, 360 F.3d 751, 754 (7th

Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle

the applicant to benefits.").  Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her
> alleged inability to work, the ALJ must obtain detailed descriptions
> of the claimant's daily activities by directing specific inquiries
> about the pain and its effects to the claimant.  She must investigate
> all avenues presented that relate to pain, including claimant's prior
> work record, information and observations by treating physicians,
> examining physicians, and third parties.  Factors that must be
> considered include the nature and intensity of the claimant's pain,
> precipitation and aggravating factors, dosage and effectiveness of
> any pain medications, other treatment for relief of pain, functional
> restrictions, and the claimant's daily activities.  (internal citations
> omitted).

*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994); *see Zurawski v. Halter*, 245 F.3d 881,

887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is

inconsistent with the objective medical evidence, she must make more than "a single, conclusory

statement . . . .  The determination or decision must contain specific reasons for the finding on

credibility, supported by the evidence in the case record, and must be sufficiently specific to

make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to

the individual's statements and the reasons for that weight."  SSR 96-7p, at *2; *see Minnick v.

Colvin*, No. 13-3626, 2015 WL 75273, at *15 (7th Cir. Jan. 7, 2015) ("[A] failure to adequately

explain his or her credibility finding by discussing specific reasons supported by the record is

grounds for reversal.") (citations omitted); *Zurawski*, 245 F.3d at 887; *Diaz v. Chater*, 55 F.3d

300, 307-08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his

analysis of the evidence).  She must "build an accurate and logical bridge from the evidence to

[his] conclusion." *Zurawski*, 245 F.3d at 887 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th

Cir. 2000)).  A minor discrepancy, coupled with the ALJ's observations is sufficient to support a

finding that the claimant was incredible.  **Bates**, 736 F.3d at 1099.  However, this must be

weighed against the ALJ's duty to build the record and not to ignore a line of evidence that

suggests a disability.  **Bates**, 736 F.3d at 1099.

The ALJ found that Flores' impairments reasonably could cause the alleged symptoms,

but she found Flores' statements regarding the intensity, persistence, and limiting effects of the

symptoms incredible as far as any inconsistencies with the RFC assessment.  (Tr. 25–26).  In

support of her finding, the ALJ first discussed Flores' medical history relating to her back pain.

(Tr. 27).  The ALJ noted Dr. Canavati's June 2011 conclusion that Flores' gait and station were

steady and that she walked without assistance.  (Tr. 27).  Additionally, the ALJ cited Dr. Perez's

opinions from September 2011 and March 2012 that concluded Flores had a normal gait and

station.  (Tr. 27).

Next, the ALJ identified that Flores could ambulate without an assistive device at her

physical therapy initial evaluation in 2012.  (Tr. 27).  Also, that her therapist stated Flores was

hard to motivate, moved unnecessarily slowly, and gave poor effort in her May 2, 2012 physical

therapy discharge summary.  (Tr. 27).  Furthermore, the ALJ indicated that Flores received only

conservative treatment except for surgery in November 2010.  (Tr. 28).

Although the ALJ relied on the findings that Flores had a normal gait and station, she

also identified Flores' decreased flexion, extension, lateral bending, and rotation.  (Tr. 27).

Additionally, she indicated Dr. Canavati's opinion that Flores would have difficulty going back

to work.  (Tr. 28).  Therefore, the ALJ considered evidence that did not support her position.

The ALJ discounted Dr. Canavati's opinion that Flores would have difficulty going back to work

because his examination concluded that Flores had a steady gait and station and she walked

without assistance.  (Tr. 28).  Furthermore, the ALJ did not rely exclusively on the objective

medical evidence to discount Flores' credibility because she also relied on her physical therapist's subjective conclusions that Flores was hard to motivate, moved unnecessarily slowly, and gave a poor effort. (Tr. 27). This court does not find that the ALJ's credibility determination was patently wrong and unsupported by the record.

Last, Flores has argued that the ALJ erred by finding her headaches were not a severe impairment. At step two, the claimant has the burden to establish that she has a severe impairment. *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). A severe impairment is an "impairment or combination of impairments which significantly limits [one's] physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 404.1521(a)**; *Castile*, 617 F.3d at 926. Basic work activities include "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." **20 C.F.R. § 404.1521(b);** *Stopka v. Astrue*, 2012 WL 266341, at *1 (N.D. Ill. Jan. 26, 2012). "[A]n impairment that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Social Security Ruling 96-3p, 1996 WL 374181, at *1. Courts have characterized step two as a *de minimis* screening device that disposes of groundless claims. *Johnson v. Sullivan*, 922 F.2d 346, 347 (7th Cir. 1990); *Elkins v. Astrue*, 2009 WL 1124963, at *8 (S.D. Ind. April 24, 2009) (citing *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005)); *see Stopka*, 2012 WL 266341 at *1 (listing cases supporting same).

In support of her conclusion that Flores' headaches were not severe, the ALJ indicated that Flores claimed she had headaches three days a week. (Tr. 22). Flores reported headaches and balance symptoms in March 2011 and underwent balance function testing in June 2011. (Tr. 22). The ALJ stated there was no evidence of balance function follow-up treatment. (Tr. 22). In

May 2012, Dr. James Stevens diagnosed Flores with pain secondary to a right occipital neuralgia for which she received an occipital nerve block. (Tr. 22). Furthermore, the ALJ indicated that Flores did not go to the emergency room for treatment and that there was no evidence of ongoing complaints to primary care physicians to corroborate the continued frequency of the headaches. (Tr. 22).

In contradiction to the ALJ's findings, Flores has argued there was evidence of follow-up for balance function symptoms. For example, Flores told Dr. Stevens that her physical therapy did not improve her impairments, and she saw Dr. Stevens for headaches and vertigo. (Tr. 504). Additionally, Flores attended physical therapy to improve function and decrease pain. (Tr. 467).

Second, the ALJ stated that Flores did not go to the emergency room for headache treatment to support her conclusion that Flores' headaches were not a severe impairment. Flores indicated that she went to two specialists for headaches and that the ALJ failed to cite an opinion that the failure to go to the emergency room lessened headache impairment to a nonsevere impairment.

The ALJ also indicated there was no evidence of ongoing complaints of headaches to primary care physicians. Flores complained of daily headaches to Dr. Perez in June 2011 and to Dr. Julie Hall in August 2011. (Tr. 384, 444). Dr. Hall administered an MRI of Flores' brain in July 2011 for "atypical migraine" among other things. (Tr. 423). In February 2012, Flores complained to Dr. Perez about headaches a second time. (Tr. 469).

Although the ALJ presented three reasons to support her conclusion that Flores' headaches were not a severe impairment, the court finds that that determination was not supported by substantial evidence. The ALJ did not provide a logical bridge between the evidence and her conclusions. The ALJ stated Flores did not complain of headaches to her

primary care physician, but Flores identified multiple complaints of headaches. Additionally, the ALJ stated there was no evidence of follow-up for balance function symptoms, but Flores indicated she received physical therapy to improve her function and decrease pain. She also complained to Dr. Stevens that the physical therapy did not improve her headaches. Based on the contradictions between the evidence and the ALJ's findings and the ALJ's failure to address that evidence, the court finds that the ALJ did not provide a logical bridge between the evidence and her conclusions.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this Order.

ENTERED this 9th day of February, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge